1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  JOANNE HOEPER, State Bar #114961
   Chief Trial Deputy
3  SCOTT D. WIENER, State Bar #189266
   Deputy City Attorney
4  Fox Plaza
   1390 Market Street, 6th Floor
5  San Francisco, California 94102-5408
   Telephone:    (415) 554-4283
6  Facsimile:    (415) 554-3837

7  Attorneys for Defendant
   CITY AND COUNTY OF SAN FRANCISCO

8

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11  ALEXIS BAUTISTA, an individual,        Case No. C07-5434 CW

12              Plaintiff,                 **JOINT CASE MANAGEMENT
                                           STATEMENT**
13        vs.
                                           Date:      March 4, 2008
14  CITY AND COUNTY OF SAN                 Time:      2:00 p.m.
    FRANCISCO, SAN FRANCISCO               Hon. Claudia Wilken
15  POLICE DEPARTMENT, SAN
    FRANCISCO POLICE OFFICER
16  WILLIAMS, SAN FRANCISCO POLICE
    SERGEANT ESPINOZA, SAN
17  FRANCISCO POLICE OFFICER LUM,
    DOES 1 to 20, Inclusive,
18
               Defendants.
19

20

21

22

23

24

25

26

27

28

The parties submit this Joint Case Management Statement in anticipation of the March 4, 2008, Case Management Conference.

1.    Jurisdiction and Service

The Court has subject matter jurisdiction over this case pursuant to its federal question jurisdiction and supplemental jurisdiction.  Defendant City and County of San Francisco was served and appeared.  The individual officer-defendants have not been served and have not appeared in the case.

2.    Facts

Plaintiffs' Version

Plaintiff and her friend of several years Rene Gallardo were sitting and talking in the backseat of Plaintiff's car after their architecture class at the art school across the street had ended. Plaintiff was on the driver side and Mr. Gallardo was on the passenger side.  They had been sitting in the car about a half-hour when San Francisco Police Officer Williams and the San Francisco Police Sergeant Espinoza approached the passenger side of the car, shined flashlights inside and told Mr. Gallardo to step out of the car and present identification.  When Mr. Gallardo stepped out the officers walked him to the back of the car.

While the conduct described in paragraph 8 was occurring, Officer Lum shown his flashlight in the car's driver's side rear window and tapped on the glass.  In response, Plaintiff opened her car door and put her left foot out to step from the car.  Before she could step out, Officer Lum stamped heavily on her left foot pinning it to the ground and put his head and shoulders inside her car so he was over and on top of her.

Officer Lum unzipped the front of Plaintiff's blouse, reached inside her blouse, and began grabbing at her breasts with one hand and pushing his other hand between her thighs and grabbing at her crotch and genitals.  Plaintiff attempted to pull her blouse closed and push Officer Lum's hand away from her genitals.  She said what are you doing and get off me to Officer Lum.

Mr. Gallardo, seeing Officer Lum's actions through the back window of the car, shouted at Officer Lum to let Plaintiff go.  Officer Lum then grabbed the front of Plaintiff's blouse and pulled it open again, tearing it and exposing her bra and breasts.  He used the front of her blouse to yank her

from the car so her bra and breasts were exposed to onlookers and pushed Plaintiff face down onto the street. He then yanked her to her feet, grabbed her left arm, twisted it to her shoulder blades. He then brought her hands down behind her back and handcuffed her.

Officer Lum then grabbed Plaintiff's collar and hair and pushed and dragged Plaintiff along the street for approximately five car lengths, to where a police car was parked. Officer Lum then pushed Plaintiff to the ground again, dragged her back to her feet again, and pushed her into the back seat of the police car. As Officer Lum was pushing her into the police car, Plaintiff asked why this was happening and Officer Lum put his hand over her face and shoved her backward by pushing on her face.

Plaintiff sat handcuffed in the back of the police car for approximately 1 ½ hours. Officer Lum then gave Plaintiff a notice to appear requiring her to appear at 850 Bryant Street, San Francisco to be booked. The ticket stated that Plaintiff had committed a misdemeanor violation of Penal Code §148A "resisting police officer". Plaintiff was then released.

At As Plaintiff was being released, Sergeant Espinoza and Officer Williams told her that she was "making too big a deal" of what had happened and explained to her that if she went to Court and apologized personally to the three policemen, they would consider dropping the charges against her. Officer Espinoza called Plaintiff a rich, spoiled brat.

<u>Defendants' Version</u>

In the late evening of October 5, 2006, San Francisco police officers were patrolling the 400 block of Townsend Street, an area known for assaults, drug use, and prostitution. Officers observed a vehicle whose rear window was fogged up. Inside the vehicle, there appeared to be a male figure on top of another person in the back seat of the vehicle. Because the vehicle was in an isolated high-crime area, the officers decided to investigate.

The officers approached the vehicle and shined a flashlight in, at which point they observed a male figure on top of a woman. When the man saw the officers, he got off of the woman. The officers motioned to the man to open the car door, which he did. The officers asked the two for identification. The man, later identified as Rene Gallardo, complied. The woman, later identified as

1 Plaintiff Alexis Bautista, refused and immediately began to speak in an agitated and belligerent

2 manner. Gallardo attempted to calm Plaintiff down, but to no avail.

3     Plaintiff suddenly exited the vehicle without being asked and then dove back into the vehicle

4 to avoid the officers. The officers decided to detain Plaintiff, given her resistive and belligerent

5 behavior during this investigative stop. Plaintiff was not compliant with the officers' instructions

6 and was physically resistive. Plaintiff kept her arms crossed in order to deny the officers access to

7 them. The officers continued to attempt to extract Plaintiff from the car, but she continued to resist.

8 The officers prepared to use pepper spray to obtain compliance, but the pepper spray was never used.

9 Gallardo pled with Plaintiff to obey the officers instructions. The officers eventually were able to

10 pull Plaintiff out of the car. Because of her resistance in being taken out of the car, she fell down on

11 her knee and scraped it when she was extracted. Once out of the car, Plaintiff continued to avoid

12 being handcuffed, but the officers were eventually were able to cuff her.

13     Only the minimal force described above was used on Plaintiff. Plaintiff's allegation that an

14 officer touched her inappropriately or sexually assaulted her is a complete fabrication. At no point

15 did any officer touch Plaintiff inappropriately, fondle her, or otherwise sexually assault her.

16     Plaintiff was briefly detained in handcuffs and then cited and released. She declined medical

17 attention. Gallardo apologized to the officers for what had occurred.

18     <u>Principal factual issues in dispute</u>

19     The circumstances surrounding Plaintiff's arrest

20     Whether Plaintiff resisted arrest.

21     Whether Plaintiff engaged in the conduct described in Defendants' version.

22     Whether the officers engaged in the conduct described in Plaintiff's version.

23     The level of force that officers used against Plaintiff.

24     Whether the officers touched Plaintiff inappropriately, as described in Plaintiff's version.

25     The nature and extent of Plaintiff's injuries.

26     3.   <u>Legal Issues</u>

27     Whether the officers had reasonable suspicion and/or probable cause to detain and/or arrest

28 Plaintiff.

Whether the officers used reasonable force against Plaintiff.

Whether the officers are entitled to qualified immunity.

Whether Plaintiff resisted arrest.

Whether Defendants' caused any of Plaintiff's alleged damages.

Whether Plaintiff was at fault for any damages that she sustained.

Whether the City is liable to plaintiff under 42 U.S.C. section 1983 and under California law.

4.    Motions

Defendants may move for summary judgment or partial summary judgment.

Defendants may move to stay *Monell* discovery and to bifurcate *Monell* issues from the underlying liability issues.

5.    Amendment of Pleadings

The parties do not anticipate amendments to the pleadings.

6.    Evidence Preservation

The parties have preserved evidence.

7.    Disclosures

The parties are engaging in initial disclosures pursuant to Fed. R. Civ. P. 26.

8.    Discovery

The parties will engage in written and deposition discovery.  Defendants may seek one or more medical evaluations of Plaintiff, depending on what injuries she is claiming.

9.    Class Actions

This case is not a class action.

10.    Related Cases

The parties are unaware of related cases.

11.    Relief

Plaintiff is seeking damages, punitive damages, attorneys fees, and costs.  Defendants are seeking attorneys fees and costs.

12.    Settlement/ADR

The parties agree to participate in mediation.

1    13.    <u>Consent to Magistrate Judge for all Purposes</u>

2    The parties do not consent to trial of this case by a United States Magistrate Judge.

3    14.    <u>Other References</u>

4    The case is not suitable for such a reference.

5    15.    <u>Narrowing of Issues</u>

6    The parties are not in agreement about any of the legal issues in this case.

7    16.    <u>Expedited Schedule</u>

8    This case is not suitable for an expedited schedule.

9    17.    <u>Scheduling</u>

10    The Court will need to set dates for the close of discovery, summary judgment (hearing and

11   briefing), and expert disclosures/discovery.

12    18.    <u>Trial</u>

13    The parties propose a trial date on in April 2009.

14    19.    <u>Disclosure of Non-Party Interested Entities or Persons</u>

15    The parties are unaware of nonparties with such an interest in this lawsuit.

16

17   Dated:  January 21, 2008

18                                     DENNIS J. HERRERA
19                                     City Attorney
                                       JOANNE HOEPER
20                                     Chief Trial Deputy
                                       SCOTT D. WIENER
21                                     Deputy City Attorney

22
                                           -/s/-    *Scott D. Wiener*
23                              By:_____
24                                     SCOTT D. WIENER
                                       Attorneys for Defendant
25                                     CITY AND COUNTY OF SAN FRANCISCO

26

27

28

1  Dated:  January 21, 2008

2                              LAW OFFICE OF NORMAN NEWHOUSE

3                                  -/s/-     *Norman Newhouse*
                              By:_____
4                                  NORMAN NEWHOUSE
5                                  Attorney for Plaintiff
                                   ALEXIS BAUTISTA
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28